UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL CASE NO. 06-365 |
| v. : | VIOLATION: 18 U.S.C. § 1344: |
| KEVIN FUNCHES : | (Bank Fraud) |
| Defendant : | |

FILED
DEC 1 9 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Kevin D. Funches, under penalty of perjury, agrees and stipulates, to the following facts in connection with his plea of guilty to 18 U.S.C. § 1344 (Bank Fraud):

### Background

At all times relevant to the Information, Defendant Kevin D. Funches ("Defendant Funches"), was a resident of the District of Columbia. Defendant Funches was also a founder of various limited liability companies organized under the laws of the District of Columbia, including The Funches Development and Management, LLC ("Funches Development"). Beginning in or about November 2002, through in or about October 2003, Defendant Funches engaged in various, connected schemes to defraud banks, corporations, his employer, and individuals, including both friends and business partners, in order to obtain money and property that he was not otherwise entitled to. As a result of his different but related schemes, Defendant Funches defrauded at least ten different victims and caused financial losses of ~~at least~~ No more than $200,000.

JoF-AUSA / HSK
K.F.

1

## The Scheme to Defraud Banks

From between on or about November 18, 2002, to on or about October 2003, Defendant Funches did knowingly execute or attempt to execute a scheme or plan to defraud banks that were federally-insured financial institutions, and did knowingly execute a scheme or plan to obtain money or property for himself from these banks by means of false or fraudulent pretenses, representations, or promises, and the general nature of the fraudulent scheme was that Defendant Funches opened new bank accounts at federally-insured financial institutions in either his own name or the name of his company, Funches Development, with small amounts of U.S. currency or checks drawn on bank accounts that he knew had insufficient funds, and, then, knowing that the newly-opened accounts had insufficient funds, Defendant Funches made cash withdrawals and wrote checks against those accounts, causing certain of the banks to sustain losses.

It was part of the scheme and artifice that on or about November 18, 2002, Defendant Funches opened a personal checking account at Bank of America, N.A. ("Bank of America"), a federally-insured financial institution, in the name of Kevin Funches ("Bank of America Account"). The account was opened with $180 in cash and between on or about November 22, 2002, and on or about March 12, 2003, Defendant Funches deposited an additional $26,307 in funds into the account. However, as discussed more fully below, some of these funds had been stolen by Defendant Funches from his employer, The New Washington Land Company ("New Washington"), and others had been stolen from his business partner, Troy James. Moreover, even though he had only deposited $26,307 into the account, between on or about November 18, 2002, and on or about March 14, 2003, Defendant Funches wrote and presented for payment

checks totaling $33,173 from the Bank of America Account. As a result of Defendant Funches's activity, the Bank of America Account had a negative balance as of on or about March 6, 2003, and on or about May 12, 2003, Bank of America closed out the account at a loss to the bank of $6,064.

It was further part of the scheme and artifice that on or about March 10, 2003, Defendant Funches opened a business checking account at another federally-insured financial institution, Wachovia Bank, formerly known as First Union National Bank ("First Union"), in the name of Funches Development ("First Union Account"). The account was opened, within the District of Columbia, with a $500 check drawn against the unfunded Bank of America Account. Between on or about March 10 and March 21, 2003, Defendant Funches then wrote and presented for payment 25 checks totaling $49,796 against the First Union Account, knowing that he had not deposited actual funds into that account. The Bank of America check used to open the account was returned for insufficient funds on or about March 12, 2003, and First Union closed the First Union Account on March 18, 2003. Nonetheless, knowing that the account had not funds and was closed, Defendant Funches continued to write checks against the First Union Account, including the following:

> (A)  On or about May 30, 2003, Defendant Funches wrote two checks from the unfunded First Union Account totaling $4,000 which he then deposited into a savings account in his name at Bank of America. Defendant Funches thereafter made a cash withdrawal from the Bank of America savings account, causing the account to go into a negative

3

balance. Bank of America ultimately closed out the savings account on or about August 12, 2003, at a loss to Bank of America of $1,846;

(B) Between on or about September 12, 2003, and on or about September 16, 2003, Defendant Funches, within the District of Columbia, wrote and presented for payment six checks from the unfunded First Union Account totaling $11,500 in order to purchase postal money orders at the Ben Franklin Post Office in Washington, D.C. As a result of this fraud, Defendant Funches caused the United States Postal Service to suffer a loss of $11,500; and

(C) Between on or about September 22, 2003, and on or about September 25, 2003, Defendant Funches, within the District of Columbia, wrote and presented for payment checks from the unfunded First Union Account totaling $5,530 in order to procure jewelry from two different Washington, D.C. area jewelers. As a result of this fraud, Defendant Funches caused Pampillonia Jewelers ("Pampillonia"), to suffer a loss of $2,569, and Chas. Schwartz & Co. to suffer a loss of $2,961.

It was further part of the scheme and artifice that on or about May 19, 2003, Defendant Funches, within the District of Columbia, opened a business checking account in the name of The Funches Development and Management Company at the federally-insured financial institution, M&T Bank, formerly known as Allfirst Bank ("Allfirst"). That account ("Allfirst Account"), was opened with $100 in cash, and a check for $3,000 that was returned on May 23, 2003, for insufficient funds. Between on or about May 20, 2003, and on or about June 26, 2003, knowing that he had only deposited $100 into the

Allfirst Account, Defendant Funches wrote and presented for payment at lest 24 checks against the Allfirst Account totaling $32,974.

It was further part of the scheme and artifice that on or about June 16, 2003, Defendant Funches, within the District of Columbia, opened a business checking account in the name of the Funches Development and Management Company at the federally-insured financial institution, Sun Trust Bank ("Sun Trust Account"). The Sun Trust Account was opened with a $500 check drawn on the unfunded Allfirst Account, and between June 17 and 18, 2003, Defendant Funches deposited into the Sun Trust Account two additional checks totaling $7,000 from the unfunded Allfirst Account. Between on or about June 18, 2003, and on or about July 1, 2003, knowing that he had not deposited money into the Sun Trust Account, Defendant Funches wrote and presented for payment at least ten checks against the Sun Trust Account totaling $106,062. Among these checks was a $18,400 check written to the "GM Card" to pay off a debt that Defendant Funches had incurred using a General Motors MasterCard credit card ("GM Card"), that he fraudulently obtained in the name of Reverend Everett Pearson ("Reverend Pearson"), as more fully discussed below. By June 23, 2003, Sun Trust Bank learned that the checks deposited into the account had all been returned for insufficient funds and the bank charged-off the account at a loss to Sun Trust Bank of $569.

It was further part of the scheme and artifice that on or about June 23, 2003, Defendant Funches opened a business checking account at the federally-insured financial institution, Chevy Chase Bank ("Chevy Chase"), in the name of Funches Development ("Chevy Chase Account"). The account was opened with $40 in cash, a $4,000 check from the unfunded Allfirst Account, and a $4,000 check from the unfunded First Union

Account. Additionally, on June 24, 2003, Defendant Funches made another deposit into the Chevy Chase Account of a $4,000 check drawn against the unfunded Allfirst Account. Between on or about June 25, 2003, and on or about August 7, 2003, Defendant Funches, knowing that he had only deposited $40 into the Chevy Chase Account, made cash withdrawals from the Chevy Chase Account in the amount of $3,400 and wrote and presented for payment at least 30 checks against that account totaling $34,183. By June 27, 2003, Chevy Chase Bank learned that the accounts at Allfirst and First Union had previously been closed for insufficient funds, and as a result, the bank charged-off the Chevy Chase Account at a loss to Chevy Chase Bank of $3,390.

It was further part of the scheme and artifice that on or about July 1, 2003, Defendant Funches opened a business checking account at the federally-insured financial institution United Bank, formerly known as Sequoia Bank ("Sequoia"), in the name of the Funches Development and Management Co., Inc. ("Sequoia Account"). The Sequoia Account was opened, within the District of Columbia, with a $2,500 check drawn against the unfunded Chevy Chase Account, and between on or about July 2 and 3, 2003, Defendant Funches deposited three additional checks drawn against the Chevy Chase Account, one check for $3,000 was deposited at the Sequoia branch located at 11th and G Streets, N.W., Washington, D.C., another check for $2,500 was deposited at the Sequoia branch on K Street in Washington, D.C.; and a third check for $3,000 was deposited at the Sequoia branch located at 2301 M Street, N.W., Washington, D.C. On or about July 3, 2003, Defendant Funches, knowing that he had not deposited any actual funds into the Sequoia Account, made two cash withdrawals from the Sequoia Account totaling $5,500 at the Sequoia branches located at 11th and G Streets, N.W., Washington, D.C. and 2301

M Street, N.W., Washington, D.C. In addition, between on or about July 2, 2003, and on or about August 26, 2003, Defendant Funches wrote and presented for payment at least seven checks against the unfunded Sequoia Account totaling $10,211. Among these checks was a check for $7,814 made payable to American Airlines, which was used by Defendant Funches to pay for first class plane tickets for himself and his companion, Jamar Dunnigan ("Dunnigan"), to travel to California. By July 7, 2003, Sequoia learned that the Chevy Chase Account was under investigation as checks used to open that account had been returned for insufficient funds, and as a result of Defendant Funches's scheme and artifice as described above, Sequoia sustained a loss of $5,623. American Airlines also sustained a loss of $7,814 given that Sequoia did not honor the fraudulent check written and presented by Defendant Funches.

It was further part of the scheme and artifice that on or about August 12, 2003, Defendant Funches opened a personal checking account in the name of Kevin D. Funches at the federally-insured financial institution, First Mariner Bank ("First Mariner Account"). The account was opened in Maryland with a $2,800 check drawn against the unfunded Allfirst Account. On or about August 15, 2003, however, the $2,800 check from Allfirst was returned for insufficient funds and on or about August 1, 2003, First Mariner closed the account after charging-off a loss of $6.50 for a returned item fee.

It was further part of the scheme and artifice that on or about August 12, 2003, Defendant Funches opened a personal checking account in the name of Kevin D. Funches at the federally-insured financial institution, Farmers Bank in Maryland ("Farmers Bank Account"). The Farmers Bank Account was opened with checks drawn on accounts that had previously been closed for insufficient funds. Nonetheless, on or about August 19,

2003, Defendant Funches wrote two checks totaling $2,890 from the unfunded Farmers Bank Account which he then presented for payment to Continental Jewelers in Washington, D.C. to fraudulently procure jewelry.

It was further part of the scheme and artifice that on or about August 25, 2003, Defendant Funches opened two bank accounts at the branches of the federally-insured institution, Adams National Bank ("Adams") in Washington, D.C. One Adams account was a personal account in the name of Kevin Funches, and the other was a business checking account in the name of Funches Development. The personal Adams Account was opened with a $500 check drawn on the unfunded First Mariner Account. The business checking Adams Account was opened with a deposit of $1,213 consisting of the following: (1) two $4 money orders; (2) a $5 money order; and (3) a $1,200 check drawn on the unfunded First Mariner Account. On or about August 25, 2003, Defendant Funches, knowing that he had only deposited $13 into the business account at Adams, wrote and presented for payment at least four checks totaling $60,050. Among these checks was a check for $54,000, made payable to Lamberton Real Estate, which was presented by Defendant Funches to Margret Lamberton Realty Company for the lease of an apartment in Georgetown. That check was falsely altered by Defendant Funches to reflect that it was a "Bank Check."

Additionally, between on or about August 26, 2003, and on or about September 11, 2003, Defendant Funches, knowing that he had not deposited any funds into the personal Adams Account, wrote and presented for payment at least five checks from the personal Adams Account totaling $9,260. With respect to three of these checks, in furtherance of this scheme to defraud, Defendant Funches falsely altered the checks to

reflect they were "Cashier Checks." Moreover, on or about August 26, 2003, within the District of Columbia, Defendant Funches attempted to withdraw $100 in cash from an Adams Account but was informed by Adams that funds would not be available until the initial deposit checks cleared. On or about August 28, 2003, Adams learned that the account opening check deposits had not cleared, but rather, had been returned for insufficient funds, and as a result, Adams later charged-off the accounts at a loss to Adams of $24.

Finally, it was part of the scheme and artifice that prior to October 2003, Defendant Funches, within the District of Columbia, opened a business checking account in the name of Washington Renovations at Sun Trust Bank ("Renovations Account"). Washington Renovations, LLC ("Renovations"), was a limited liability company organized under the laws of the District of Columbia, which had its principal place of business at 1725 I Street, N.W., Washington, D.C. Defendant Funches assisted in the founding of Renovations. The Renovations Account was opened by Defendant Funches with checks drawn on bank accounts that had been closed for insufficient funds. Nonetheless, on or about October 10, 2003, knowing that he had not deposited any money into the Renovations Account, Defendant Funches wrote two checks against the Renovations Account totaling $10,134 which he then presented to Pampillonia to fraudulently procure jewelry.

### The Scheme to Defraud New Washington

As mentioned above, Defendant Funches's scheme to defraud banks related in part to another scheme he had devised, such scheme being a scheme or artifice to defraud his former employer, New Washington. New Washington was a limited liability

9

company that managed real estate throughout the District of Columbia, and was located at 1804 T Street, N.W., Washington, D.C. Defendant Funches was employed as the Director of Operations for New Washington from between on or about June 17, 2002, and on or about March 5, 2003, and in that capacity, he was responsible for, among other things, assisting in the leasing process and purchasing appliances for properties managed by New Washington. Defendant Funches had no authority to sign checks on behalf of the company; however, to facilitate his work, the president of New Washington, Suzanne Winter, provided Defendant Funches with her personal American Express credit card for business related purchases. Defendant Funches was expressly advised that he was not permitted to make purchases with the credit card for his personal use or behalf.

Between on or about August 21, 2002, and on or about March 5, 2003, Defendant Funches knowingly engaged in a scheme or systematic conduct to defraud his employer, New Washington, and to obtain property of New Washington by means of false and fraudulent pretenses, and did, as a result of his scheme, obtain property of New Washington that had a value of $250 or more. The general nature of the scheme was that while working for New Washington, Defendant Funches, among other things: (1) created and submitted phony vendor invoices for payment; (2) forged the signature of Ms. Winter on checks drawn on New Washington's bank account at First Union; (3) made unauthorized personal purchases with Ms. Winter's American Express credit card; and (4) forged endorsements on checks made payable to New Washington from individuals and vendors.

In furtherance of his overall scheme to defraud New Washington, Defendant Funches created on his work computer blank letterhead for the company, C. Palmer &

Associate, Incorporated ("Palmer"). Palmer was a vendor located in Washington, D.C. that frequently did work for properties managed by New Washington. Between on or about January and February 2003, Defendant Funches created phony invoices on Palmer letterhead reflecting amounts due and owing to Palmer by New Washington for services rendered. These phony invoices were all submitted by Defendant Funches to Ms. Winter for payment, and as a result, Ms. Winter wrote checks made payable to Palmer which she then left in New Washington's reception area for pick-up by the vendor. Defendant Funches, however, removed the checks from the reception area, and after he forged the endorsement of Palmer's authorized signatory, Christopher Palmer, Defendant Funches deposited the checks into the Bank of America account described above. In total, Defendant Funches obtained about $12,842 from New Washington by creating phony invoices.

Defendant Funches also forged the endorsement of Ms. Winters on checks drawn on New Washington's bank account at First Union in furtherance of his overall scheme to defraud his employer. Some of these checks were made payable to vendors with whom New Washington did business. Funches endorsed all of these checks, however, and either cashed them or deposited them into accounts at Bank of America described above. In total, Defendant Funches obtained $4,167 from New Washington by forging Ms. Winter's signature.

As part of his overall scheme to defraud New Washington, Defendant Funches also used Ms. Winter's American Express credit card for his personal benefit and used and engaged in activities to conceal his fraudulent purchase. Specifically:

(A) On or about February 20, 2003, Defendant Funches ordered a $2,336 computer and accompany equipment from Dell Marketing, L.P., a company located in Austin, Texas. Defendant Funches, without authorization, then used Ms. Winter's credit card to pay for the computer and equipment, and arranged for the computer to be delivered via UPS from Dell Marketing, L.P. to Dunnigan in West Virginia. In order to conceal his act ivies, Defendant Funches created and submitted a phony work order to New Washington reflecting that he had purchased a "Dell Computer Electronics Security Alarm System with Digital Surveillance" fo4 $2,347 from Dell on behalf of a tenant at 1623 R Street, N.W., Washington, D.C.;

(B) On or about February 22, 2003, Defendant Funches used Ms. Winter's credit card, without authorization, to pay for a $866 photo shoot for Dunnigan at Vical Photo, Inc. in Forest Hills, New York. In order to conceal his fraudulent activities, Defendant Funches created and submitted a phony work order to New Washington reflecting that he had purchased an "Electrical Lighting System Correction of [illegible] & Fixtures & Bulbs" for $866 from Vical Photo on behalf of a property managed by New Washington; and

(C) On or about February 16, 2003, Ms. Winter, due to a snowstorm, permitted Defendant Funches to charge her credit card one night's lodging at the Hilton Hotel in New York. This authorization was given in writing and expressly provided that it was only for one evening. However, in

furtherance of his scheme to defraud New Washington, between on or about February 17, 2003, and on or about February 26, 2003, Defendant Funches charged $1,125 to Ms. Winter's credit card to pay for personal lodging at the Hilton Hotel which was above and beyond the one authorized evening. In total, Defendant Funches conducted about $4,327 in unauthorized credit card transactions for electronic goods, lodging and services purchased for his personal benefit and use.

It was further part of his overall scheme to defraud New Washington that on or about February, 2003, Defendant Funches stole checks made payable to New Washington which he then fraudulently endorsed and deposited into the Bank of America accounts described above. In total, Defendant Funches obtained $2,443 by stealing checks made payable to New Washington.

Finally, in furtherance of his overall scheme to defraud New Washington, in late March 2003, Defendant Funches created a least for a property managed by New Washington that was located at 2301 Connecticut Avenue, N.W., Apartment G-B, in the name of Peter Sudarsky ("Sudarsky"), his ex-employer in New York City. In July 2003, New Washington instituted proceedings against Sudarsky in the Superior Court of the District of Columbia in connection with back rent it was owed, and on July 10, 2003, a default judgment was entered against Sudarsky in the amount of $7,002. Shortly thereafter, Defendant Funches purported to pay New Washington $7,002 owed by Sudarsky in that Defendant Funches delivered to the attorney for New Washington a check for that amount drawn on the unfunded Chevy Chase Account. That check, however, was returned for insufficient funds.

On May 31, 2003, Defendant Funches signed a written agreement agreeing to pay back New Washington $55,042. To date, Defendant Funches has not reimbursed any of the monies pursuant to the agreement.

### The Scheme to Defraud Reverend Pearson

As mentioned above, among Defendant Funches's related schemes to defraud was a scheme that involved Reverend Pearson, a priest at the Holy Name Catholic Church located at 920 11th Street, N.E., Washington, D.C. Between on or about March 20, 2003, to on or about May 30, 2003, within the District of Columbia and elsewhere, Defendant Kevin Funches executed a scheme to defraud Reverend Pearson and to obtain money and property for himself by means of materially false and fraudulent pretenses, representations, or promises, and the general nature of the scheme was that Defendant Funches, using identifying information belonging to Reverend Pearson without authorization, opened or attempted to open credit card accounts at various financial institutions in either the name of Reverend Pearson or Funches Development, and effected unauthorized transactions with at least one of such credit cards for his own benefit and use.

It was part of the scheme and artifice that on or about March 20, 2003, Defendant Funches approached Reverend Pearson at the Holy Name Catholic Church to request that the priest co-sign for a sports utility vehicle that Defendant Funches represented he wanted to purchase for what he claimed was his newly-acquired business, the Quincy Place Market located at 114 Quincy Place, N.E., Washington, D.C. ("Quincy Market"). After assurances from Defendant Funches that Quincy Market would keep up with the car payments, Reverend Pearson agreed to co-sign for the car, and he met Defendant

14

Funches at Capitol Pontiac in Greenbelt, Maryland, where they filled out purchase paperwork for Funches Development to purchase a Yukon Denali for $51,089 ("Yukon"). In that paperwork, a copy of which was provided to Defendant Funches, was identifying information for Reverend Pearson, such as his name, date of birth, and social security number. Defendant Funches took receipt of the Yukon on March 20, 2003, yet he failed to make a single legitimate payment on the vehicle. Moreover, on or about September 30, 2003, Defendant Funches fraudulently traded-in the Yukon for a different vehicle and cash at Rockville Motors in Rockville, Maryland. As a result, Reverend Pearson was held personally responsible for payment on the Yukon.

It was further part of the scheme and artifice that on or about March 21, 2003, Defendant Funches informed Reverend Pearson that in connection with their joint purchase of the Yukon, he needed the Reverend's mother's maiden name and a copy of the Reverend's driver's license. Accordingly, Reverend Pearson provided Defendant Funches with the requested information. Then, on or about March 28, 2003, Defendant Funches, using identifying information for Reverend Pearson without authorization, applied to Household Credit Card Services, Inc. ("Household"), an affiliate of Household Bank that provided administrative and processing services for the GM Card, for a GM card in the name of Reverend Pearson. Defendant Funches also made himself an authorized user on the account and requested that account statements be mailed to his home address at 1612 D Street, N.E., Washington, D.C. As a result of Defendant Funches's actions, Household mailed two credit cards, one in the name of Everett Pearson and another in the name of Kevin Funches to Defendant Funches. Shortly after his receipt of the credit cards, Defendant Funches gave Reverend Pearson the GM card

issued in the Reverend's name, claiming that it came from the Yukon. When Reverend Pearson expressed that he did not need or want the card, Defendant Funches falsely represented that the credit card account belonged to the Quincy Market Street and that Reverend Pearson was just an authorized user. Reverend Pearson never activated the card given to him by Defendant Funches nor did he ever use the GM Card.

Defendant Funches, on the other hand, in furtherance of and to execute the scheme to defraud Reverend Pearson, activated the GM Card in his possession. Moreover, between on or about April 11, 2003 and on or about May 18, 2003, Defendant Funches effected multiple unauthorized transactions with the GM Card for his personal use and benefit. Among these unauthorized transactions were several cash withdrawals from Bank of America branches located in Washington, D.C. As a result of Defendant Funches's fraudulent use of the credit card, Household sustained a loss of $21,668.

It was further part of the scheme that on or about May 20, 2003, Defendant Funches, using identifying information for Reverend Pearson without authorization, filled out a materially false written application to First Bankcard Center ("First Bankcard"), a division of First National Bank of Omaha, for a commercial credit card in the name of Funches Development, LLC. Defendant Funches forged the signature of Reverend Pearson on that application and then, in furtherance of and to execute the scheme to defraud Reverend Pearson, sent the application and other documentation to First BankCard by interstate facsimile. After attempting to verify the information on the false application faxed by Defendant Funches, First BankCard suspected that it was a fraudulent account and contacted Reverend Pearson. First BankCard was informed by

Reverend Pearson that he had not applied for any such credit card and accordingly, the credit card application was not approved.

It was further part of the scheme that on or about March 31, 2002, Defendant Funches, using identifying information for Reverend Pearson without authorization, applied for a business credit card at Bank of America in the name of Funches Development. In the on-line application, Defendant Funches falsely represented that Reverend Pearson was the Vice-President of Funches Development. Thereafter, Defendant Funches, in furtherance of and to execute the scheme to defraud Reverend Pearson, sent to Bank of America, by interstate facsimile, an executed Agreement and Personal Guaranty ("Guaranty") that was required for approval of the business credit card application. The Guaranty contained the forged signature of Reverend Pearson and falsely stated that Reverend Pearson was the Vice-President of Funches Development. The credit card application was declined by Bank of America.

Finally, it was further part of the scheme that on or about May 30, 2003, Defendant Funches, using identifying information for Reverend Pearson without authorization, applied for a personal credit card at Bank of America in the name of Everett Pearson. Defendant Funches also made himself an authorized user on the account. Bank of America immediately mailed credit cards in the name of Everett Pearson and Kevin Funches to the address Defendant Funches had provided, which was 5505 16th Street in Northeast, Washington, D.C. However, the post office forwarded the credit cards to 5505 16th Street, Northwest, Washington, D.C., which was the address of Reverend Pearson's mother. Accordingly, Reverend Pearson became aware of the

fraudulent credit card account and on June 17, 2003, he immediately notified Bank of America that the card was unauthorized.

Date: 12-19-06

*Kevin Funches*
KEVIN D. FUNCHES
Defendant

    I have read each of the 18 pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 12/19/06

*Howard B Katzoff*
HOWARD KATZOFF, ESQ.
Attorney for the Defendant